| DISTRICT COURT, CHAFFEE COUNTY, COLORADO | |
|---|---|
| Eleventh Judicial District<br>142 Crestone Ave, P.O. Box 279, Salida, CO 81201<br>Telephone: (719) 539-2561 | DATE FILED: April 5, 2024 2:44 PM<br>CASE NUMBER: 2023CV30010 |
| **Plaintiffs:**<br><br>**Ellis Athanas**<br><br>v.<br><br>**Defendants:**<br><br>**Cory Orth, et al.** | ^ Court use only ^<br><br>Case Number: 2023CV30010<br><br>Div.: 2 |
| **ORDER RE: MOTION TO AMEND TO INCLUDE COLORADO COMMON LAW QUALIFIED IMMUNITY DEFENSE** | |

Defendants filed a joint motion to amend their answers to include the common law defense of qualified immunity under Colorado law. Plaintiff Athanas filed a response objecting to the motion. Defendants filed a reply. The Court has considered the motion, response, and reply and enters the following findings and order.

## I. BACKGROUND

According to the complaint[1], Mr. Athanas was arrested after members of the Chaffee County Combined Tactical Team (CCCTT) assembled to execute an arrest warrant. The CCCTT was comprised of members from the Salida Police Department, Buena Vista Police Department, and the Chaffee County Sheriff's Office, all which contributed manpower and resources to form the CCCTT.

Mr. Athanas claims his rights were violated because of the arrest. Athanas advances three claims: (1) civil action for deprivation of rights under § 13-21-131, C.R.S., and article II, section 7 of the Colorado Constitution – excessive force (against all defendants); (2) civil action for breach of duty to intervene in excessive force, in violation of § 18-8-802, C.R.S., and pursuant to § 13-21-131, C.R.S., and article II, section 7 of the Colorado Constitution – excessive force (against all defendants); and (3) civil action for deprivation of rights pursuant to § 13-21-131, C.R.S., and article II, section 7 and 25 of the Colorado Constitution – malicious prosecution in 2022M5021 (against Corporal Marusarz).

---

[1] The allegations in this section are taken from the Plaintiff's Complaint and convey his theory of liability.

1

The basis for Mr. Athanas's claims is that he was subjected to a SWAT-like "takedown" after officers received information that four weeks earlier Athanas verbally threatened his girlfriend and squeezed the arm of his child too hard.

Based on these misdemeanor allegations, officers obtained an arrest warrant and conducted surveillance on Athanas, which disclosed he would be going to his gym the evening of his arrest. Fifteen officers "were gathered, prepped, and utilized for this 'operation'" of taking down Athanas. Complaint, ¶ 10. Information was received from a civilian that Athanas had arrived at the gym, so the CCCTT members loaded into the S.W.A.T. truck and staged to prepare to arrest Athanas as he got into his truck to go home. After pulling out of the gym parking lot, Athanas noticed the S.W.A.T. truck begin moving so he pulled over to move out of its way. The S.W.A.T. truck then activated the emergency lights and pulled behind Athanas's truck. The "assault team" of fifteen officers, in full military tactical gear, fully armed, and weapons (ARs) drawn, poured out of the S.W.A.T. truck and approached Athanas's truck. As they approached, Deputy Brown detonated a "flash sound diversionary device" (flash bang)[2] at the front of the cab of the truck. All this occurred while Athanas sat in his truck, looking in his rearview mirror at the assault team's approach. No warnings or commands were given prior to Deputy Brown's use of the flash bang. The CCCTT officers then swarmed the truck, pulled Athanas from the driver's seat, took him to the ground, handcuffed and arrested him.

Athanas became nauseated, suffered a severe headache, and had difficulty staying awake and collapsed. He was taken to the hospital, where it was determined that Athanas suffered a concussion as a result of the flash bang device.

After his arrest based on these claims, Athanas was charged with misdemeanors that were ultimately dismissed for lack of evidence.

The Defendants have filed a joint motion to amend the answer to include the state common law qualified immunity defense advanced by *Trimble v. City and County of Denver,* 697 P.2d 716, 729 (Colo. 1985).

## II. LEGAL FRAMEWORK

Colorado Rule of Civil Procedure 15(a) permits a party to amend a pleading by leave of court. Rule 15(a) advances the "purpose of our Civil Procedure Rules [] to secure a just, speedy, and inexpensive determination of every action." *Benton v. Adams,* 56 P.3d 81, 85 (Colo. 2002). The focus of the rule is to encourage resolution of the merits in a reasonable, expeditious manner, and is intended to allow parties to advance pleadings reflecting their true positions. *Id.* Further, the rule has been interpreted to reflect a liberal policy toward allowing timely amendments to pleadings. *Id.* Whether to allow amendment is fact-dependent, but case law establishes grounds for denial include

---

[2] Although it is too early in the litigation here to know the precise characteristics of the flash-bang device used in this case, courts have concluded these weapons "carry serious risks" and have "powerful enough concussive effect to break windows and put holes in walls" and burn "at around 5,000 degrees Fahrenheit" and can be "lethal" and "pose a risk of traumatizing unsuspecting [individuals exposed to them]" *Z.J. by & through Jones v. Kansas City Board of Police Commissioners,* 931 F.3d 672, 681-82 (8th Cir. 2019).

undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing part, and futility of amendment. *Id.* at 86.

### III. APPLICATION

The question here is whether amendment of the answer would be futile because the common law defense of qualified immunity is not permitted under the law.

Defendants seek to amend their answer to include as a defense what they coin as "common law immunity for the performance of discretionary acts by public officials." Motion to Amend, p. 2. The sole source for this common law immunity in Colorado is *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985) and *Leake v. Cain,* 720 P.2d 152 (Colo. 1986). Defendants argue that even though Senate Bill 20-217 (the genesis of section 13-21-131, C.R.S.) specifies that qualified immunity is not a defense to claims brought under the statute, this provision did not address "common law immunity for the performance of discretionary acts by public officials" recognized in *Trimble,* which they argue has never been overruled and has been dormant for decades as "parties sought other remedies under the [Colorado Governmental Immunity Act] or federal law." Motion to Amend, p. 2.

Plaintiff's claims are brought under section 13-21-131, C.R.S., a relatively new state statute authorizing excessive force civil claims. As relevant here, statute provides for a cause of action against any peace officer who violates, or fails to intervene in the violation of, an individual's state constitutional rights (the liability provision):

> (1) A peace officer, as defined in section 24-31-901 (3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief.
>
> (2)(a) **Statutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section**. The **"Colorado Governmental Immunity Act", article 10 of title 24, does not apply to claims brought pursuant to this section**.
>
> (b) **Qualified immunity is not a defense to liability pursuant to this section**.
>
> (3) In any action brought pursuant to this section, a court shall award reasonable attorney fees and costs to a prevailing plaintiff. In actions for injunctive relief, a court shall deem a plaintiff to have prevailed if the plaintiff's suit was a substantial factor or significant catalyst in obtaining the results sought by the litigation. When a judgment is entered in favor of a defendant, the court may award reasonable costs and attorney fees to the defendant for defending any claims the court finds frivolous.

§ 13-21-131(1)-(3), C.R.S. (emphasis added).

3

The statute also provides an indemnification provision (the indemnification provision) separate from the provision establishing a cause of action:

> (4)(a) Notwithstanding any other provision of law, a peace officer's employer shall indemnify its peace officers for any liability incurred by the peace officer and for any judgment or settlement entered against the peace officer for claims arising pursuant to this section; except that, if the peace officer's employer determines on a case-by-case basis that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of the judgment or settlement or twenty-five thousand dollars, whichever is less. Notwithstanding any provision of this section to the contrary, if the peace officer's portion of the judgment is uncollectible from the peace officer, the peace officer's employer or insurance shall satisfy the full amount of the judgment or settlement. A public entity does not have to indemnify a peace officer if the peace officer was convicted of a criminal violation for the conduct from which the claim arises unless the peace officer's employer was a causal factor in the violation, through its action or inaction.
>
> (b)(I) An employer shall not:
>
> (A) Preemptively determine whether a peace officer acted in good faith before such action in question has occurred; or
>
> (B) Provide a determination providing that any peace officer or peace officers are deemed to have acted in good faith until completion of a documented investigation conducted by the employer.
>
> (II) If a person believes that an employer has violated the provisions of subsection (4)(b)(I) of this section, the person shall submit a complaint to the P.O.S.T. board, created in section 24-31-302, which shall refer the complaint to an administrative law judge to determine whether a violation occurred. The administrative law judge shall notify the P.O.S.T. board chair of a finding that a violation of subsection (4)(b)(I) of this section occurred. If a violation is found, the P.O.S.T. board shall not provide P.O.S.T. cash fund money to the employer for one full year from the date of the finding.
>
> (III) For the purposes of this subsection (4)(b), an employer includes the elected sheriff, chief of police, city or town administrator, county administrator, mayor, city or town council, county commission, or any other public body with formal supervision and oversight of a law enforcement agency.

§ 13-21-131(4), C.R.S. This subsection (4) – the indemnification provision – provides officers are not *personally* liable if they act in good faith and reasonable belief the action was lawful; but the indemnification provision still holds employers accountable for the actions of its officers.

As relevant to the current question, the liability provision of the statute creates a cause of action for any deprivation of induvial rights secured by the bill of rights, article II of the Colorado Constitution. And as relevant to the claims here, article II, section 7 of the Colorado Constitution provides:

> The people shall be secure in their persons, papers, homes and effects, from **unreasonable** searches and **seizures**; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7 (emphasis added). Thus, the question in this case is whether the seizure of Athanas was constitutionally impermissible as an unreasonable seizure under article II, section 7.

As can be seen from subsection (2)(b) of section 13-21-131, C.R.S., above, the statute plainly reads: "Qualified immunity is not a defense to liability pursuant to this section."

Defendants argue that a "common law immunity for the performance of discretionary acts by public officials" exists but has been dormant for decades. They point to *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985), as establishing this form of immunity and argue that it is still available as a defense. Defendants also supply an opinion by another district court as persuasive authority for their request to assert the common law defense. *See* Motion to Amend, Exh. A. In that opinion, the district court adopted the arguments by the defendants in a separate case arising out of Boulder County and concluded that the term "qualified immunity" in section 13-21-131, C.R.S., is ambiguous. The district court therefore looked to canons of statutory construction, including looking to the legislative history, to resolve the ambiguity and discern the meaning of "qualified immunity" and determine whether it included the "common law immunity for the performance of discretionary acts by public officials" as identified in *Trimble*. The Boulder court ultimately concluded that the defense of "common law public official immunity" was distinguishable from "qualified immunity." The Boulder court determined that this immunity was not intended to be prohibited as a defense from the provision stating "[q]ualified immunity is not a defense to liability pursuant to this section." Thus, the court concluded, this "common law public official immunity" was available and could be asserted as a defense in the Boulder County case.

Respectfully, this Court departs from the Boulder County district court's reasoning and conclusion based on the following analysis.

The Court agrees with the Boulder court's conclusion that passage of the Colorado Governmental Immunity Act (CGIA) did not abrogate the common law immunity addressed in *Trimble* and *Leake*. As the Boulder County district court pointed out, section 24-10-118(4) of the CGIA provides "[t]he immunities provided for in this article shall be in addition to any common-law immunity applicable to a public employee." And there appears to be no case law overruling the common law immunity addressed in *Trimble* and *Leake*. But this is only important here to the extent it establishes there is no indication that the common law immunity addressed in those cases has otherwise been abrogated or modified. *See Vigil v. Franklin,* 103 P.3d 322, 329-30 (Colo. 2004) (acknowledging common law applies until abrogated or modified by the General Assembly). So, the common law immunity identified in *Trimble* and *Leake* had not been abrogated – either explicitly

5

through legislative action or by recognition of our appellate courts – by the CGIA or cases interpreting the CGIA. Therefore, at the time of passage of SB 20-217, the common law qualified immunity doctrine had not been abrogated by the CGIA and, as discussed below, the legislature is presumed to have known this.

But this is where this Court departs from the Boulder court's analysis. As noted, the plain language provides that no statutory immunity and no governmental immunity as provided in the CGIA apply to claims brought under the statute. § 13-21-131(2)(a), C.R.S. And the plain language specifies separately also that qualified immunity is not a defense to claims brought under the statute. § 13-21-131(2)(b), C.R.S. The Boulder court concluded that the term "qualified immunity" as used in the statute was ambiguous. This Court disagrees.

The Boulder court noted that since the CGIA was enacted, Colorado courts have permitted public officials to raise the defense of qualified immunity when they are sued for civil rights violations under 42 U.S.C. § 1983. The court then cited to a U.S. Supreme Court decision explaining the standard for qualified immunity in the federal context, and noted that the criteria for determining qualified immunity is "thus different from criteria to establish common law immunity under state law." Exh. A, p. 5.[3] The Boulder court then acknowledged that when a statute is unambiguous, courts must apply the plain language; but if the statute is susceptible to more than one reasonable interpretation it is ambiguous and courts must use statutory construction principles to interpret its meaning. Exh. A, p. 6. Nevertheless, the Boulder court concluded the term "qualified immunity" was ambiguous after looking at dictionary definitions of the term and noting the difference between the meaning of qualified immunity in the federal context under 42 U.S.C. § 1983 claims and the common law qualified immunity set forth in *Trimble,* 697 P.2d at 729. The Boulder court concluded, "the term qualified immunity may plausibly refer to federal qualified immunity or more broadly to common law immunity of any kind." Exh. A, p. 7.

This Court believes that the term "qualified immunity" in the statute is unambiguous and – as it plainly states – prevents the use of qualified immunity as a defense for claims brought under the state law. The Court sees no reason to differentiate between qualified immunity as understood in the federal context or common law qualified immunity under state law – either way, the plain language establishes it cannot be relied upon as a defense to liability for state claims brought under the statute.

Senate Bill 20-217 created a state civil cause of action for deprivation of rights which permits plaintiffs to bring civil actions against peace officers who under color of law deprive the plaintiff of

---

[3] This Court acknowledges the standard for qualified immunity, as developed in the federal context via case law as applied to § 1983 claims, has come to have a very particular meaning. *See* Josselin Aldana*, Within A City's Limits: A Local Government's Power to Hold Police Officers Accountable*, 91 Fordham L. Rev. 877, 885–87 (2022) (providing brief overview of the evolution in the federal context of the qualified immunity doctrine and noting, "By narrowing the power of § 1983 and creating the qualified immunity doctrine, the Court has (1) made it difficult for plaintiffs to seek relief for constitutional rights violations, even if the conduct is extreme and egregious, and (2) failed to protect the purpose of § 1983 as a vehicle that limits state power by guaranteeing basic federal rights.") The Court also acknowledges that this federal doctrine of qualified immunity may have been of concern to the legislators in enacting SB 20-217. But as discussed below, the plain language of the statute evidences the legislature's intent to preclude – broadly and generally – qualified immunity as a defense and does not limit the preclusive effect to only federal qualified immunity.

their state constitutional rights. § 13-21-131(1), C.R.S. It also provides that peace officers who fail to intervene may have claims brought against them when a person is deprived of their state constitutional rights. *Id.* In other words, the statute created a civil cause of action that is like § 1983 claims but may be brought under state law; and the state law is more expansive in providing for liability for failure to intervene and by excluding any statutory immunity and qualified immunity as a defense. But it also provides that peace officers are not individually liable (the indemnification provision) because they must be indemnified by their employer unless the officer is determined to have acted without "good faith and reasonable believe that the action was lawful." § 13-21-131(4), C.R.S. Even in this latter scenario, liability is still capped. But the employers are responsible for ensuring officers' actions do not violate individuals' constitutional rights by operation of the indemnification provision – they have incentive to ensure officers are properly-trained.

The Court will not get too far into the legislative history because the Court concludes that the statutory language is unambiguous, but the following context supports the Court's conclusion here. The bill was passed in 2020 in the time of the George Floyd protests in Denver and throughout the state and nation. Its bill prime sponsors, Senator Leroy Garcia and Senator Rhonda Fields[4], opened the discussion on the bill before the Senate Committee on State, Veterans, & Military Affairs by noting the bill was intended to promote police accountability and integrity and "revoke[] qualified immunity for law enforcement which has served as a shield for many of them from accountability and has significantly denied families justice." CONCERNING MEASURES TO ENHANCE LAW ENFORCEMENT INTEGRITY, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION: Hearing Before the Senate State, Veterans, & Military Affairs Committee, 2020 Regular Session, June 4, 2020, Statement of Senator Garcia, approx. 4:00.[5] Senator Fields noted that the bill "helps address police brutality in Colorado" and cited to the cases garnering national attention at the time such as those involving Eric Garner and George Floyd as the genesis of the bill. *Id.,* Senator Fields, approx. 4:11.[6]

The bill was amended from its original form, as is not uncommon with passage of any legislation, and was ultimately passed and signed by Governor Polis. In this context, the final, amended bill passed by the Colorado General Assembly reads that qualified immunity shall not be a defense to claims brought under the statute.

When interpreting a statute, "our primary purpose is to ascertain and give effect to the General Assembly's intent." *Cowen v. People,* 2018 CO 96, ¶ 12 (quotation omitted). "When interpreting a statute, we first look at its plain language" and "[w]hen the plain language is clear, our job ends, and we must apply the statute as written." *People v. Hayes,* 2020 COA 175, ¶ 17; *see also Hernandez v. People,* 176 P.3d 746, 751-52 (Colo. 2008) ("If the plain language of the statute is clear and unambiguous, we interpret the statute according to its plain meaning"). A "court should always

---

[4] The Boulder court referred to Senator Gardner and Senator Foote as being sponsors of the bill (Exh. A, pp. 10-11) and that statements made by them during the legislative history supported the court's conclusion that the legislature did not intend to exclude state common law qualified immunity. However, this Court has confirmed from the Colorado General Assembly's website that Senator Gardner, whose statements the Boulder court relied on as a "sponsor" of the bill, was not a bill sponsor.
[5] Available at: https://sg001-harmony.sliq.net/00327/Harmony/en/PowerBrowser/PowerBrowserV2/20200604/-1/10124 (as of 4/1/2024).
[6] *Id.*

turn first to the plain meaning rule before all other rules because courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Cowen,* ¶ 12 (cleaned up); *Connecticut National Bank v. Germain,* 503 U.S. 249, 253-54 (1992). "To reasonably effectuate the legislature's intent, a statute must be read and considered as a whole and should be interpreted to give consistent, harmonious, and sensible effect to all its parts." *Mosley v. People,* 2017 CO 20, ¶ 16. "And we consider the words or phrases at issue in context – both in the context of the statute of which the words or phrases are a part and in the context of any comprehensive statutory scheme of which the statute is part." *People v. Berry,* 2017 COA 65, ¶ 13. Statutory construction should avoid or resolve potential conflicts and give effect to all legislative acts, if possible. *Cowen,* ¶ 13.

Here, the words and phrases of the statute were designed to create a civil cause of action under state law and to remove any defense of statutory or qualified immunity – this is established by the statute's plain language. The statute reads plainly that qualified immunity shall not be a defense to actions brought under the statute. And prohibiting "qualified immunity" should mean just that – no claim of qualified immunity shall be a defense. The words have plain meaning – whether the person asserting qualified immunity as a defense relies on case law developed in the federal context or state context, it cannot be asserted as a defense because "[q]ualified immunity is not a defense to liability pursuant to this section."

This interpretation which affords the words their plain meaning gives "consistent, harmonious, and sensible effect to all [the statute's] parts" and avoids a "construction[] that would render any words or phrases superfluous or lead to illogical or absurd results." *Cowen,* ¶ 31 (quotation omitted). It gives sensible effect to all the statute's parts because considering subsection (2)(a) and (2)(b), the legislature clearly intended to remove statutory immunities, "limitations on liability," any provision of the CGIA, as well as any "qualified immunity" more broadly. These two subsections work together to set forth the legislature's intent to eliminate any statutory immunity or qualified immunity doctrine that would otherwise operate to preclude liability.

This interpretation also gives sensible effect to the interaction between the liability provision and the indemnification provision, which provides a safety net, so to speak, for individual peace officers and indemnifies them from any personal liability found in subsection (1) so long as the peace officer has been found to have acted in good faith and under a reasonable belief the action was lawful. If the legislature had intended to provide such a defense in the liability provision, it would have said so, as it had done in the indemnification provision. The indemnification provision still holds the employers accountable for ensuring officers' actions are constitutional even if the officer is found to have acted in good faith and reasonable belief. Taken together, these provisions ensure there is accountability to those whose rights are violated, as the bill's prime sponsor Senator Rhonda Fields indicated was the intent of bringing SB 20-217.

This interpretation avoids the illogical or absurd result of concluding our state legislature would have intended only to foreclose as a defense qualified immunity as understood in the context of federal cases interpreting federal law - § 1983 claims – while ignoring state law on qualified immunity. Arguably, federal qualified immunity might not even apply under the newly enacted state law propounded by SB 20-217, which differed in material ways from § 1983 claims. So, any

conclusion that the legislature intended *only* to remove federal qualified immunity as a defense while ignoring state law on qualified immunity simply makes no sense.

Additionally, "[i]n interpreting statutes, the court presumes the legislation was passed with deliberate and full knowledge of all existing law dealing with the same subject." *Robbins v. People,* 107 P.3d 384, 389 (Colo. 2005); *Vigil,* 103 P.3d at 327-28 (when the legislature chooses to legislate in a particular area, the General Assembly is presumed to be aware of existing case law precedent).

At the time Senate Bill 20-217 was passed, the cases relied on by Defendants as establishing this common law immunity defense – *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985) and *Leake v. Cain,* 720 P.2d 152 (Colo. 1986) – existed and the legislature is presumed to have full knowledge of their existence. Although Defendants characterize the immunity discussed in these cases as "common law immunity for the performance of discretionary acts by public officials," ultimately our supreme court was deciding in *Trimble* whether to adopt in Colorado most states' articulation at the time of *qualified immunity* for public officials. *Trimble,* 697 P.2d at 729. The court in *Trimble* explained that "an official performing discretionary acts within the scope of his office enjoys only *qualified immunity* … [and] is shielded from liability for civil damages only insofar as his conduct is not willful, malicious or intended to cause harm." *Id.* (emphasis added). The Court adopted this rule in *Trimble,* which it specifically referred to as qualified immunity. Although it used the term "qualified immunity" interchangeably with what it also referred to as "official immunity," the court was referring unambiguously to qualified immunity in the *Trimble* case. *Id.* at 729-30.

The *Trimble* court provided an overview of the evolution of immunity. Juxtaposing the concept of absolute immunity conferred upon officials with the period between 1960 and 1979 in Colorado during which officials enjoyed no immunity, the court then discussed the development of qualified immunity and the distinction between discretionary and ministerial acts performed under color of authority. The question in *Trimble* was "what type of immunity an official like [defendant], performing discretionary acts within the scope of his office, enjoys under Colorado law." *Id.* at 729. It adopted qualified immunity as its answer, which it described as being "shielded from liability for civil damages only insofar as his conduct is not willful, malicious or intended to cause harm."[7] *Id.* The court in *Leake v. Cain,* 720 P.2d at 160, noted that "qualified immunity" as articulated in *Trimble* applied in cases involving public officials, including peace officers.

Both *Trimble* and *Leake*, and their articulation of the common law qualified immunity principles addressed in those cases, therefore existed prior to the passage of SB 20-217 and the

---

[7] The Court notes this is the common law qualified immunity defense as articulated in *Trimble*. However, the Defendants rely on statements by a senator when addressing amendments to the bill that he wanted to preserve the "good faith but erroneous belief" defense as establishing that legislators intended to still permit qualified immunity under *Trimble,* despite the statutory provision that qualified immunity is not a defense. As noted above, because the Court has determined the plain language unambiguously provides that qualified immunity is not a defense, no further analysis or statutory construction is necessary. Defendants cannot assert qualified immunity – or, "common law immunity for the performance of discretionary acts by public officials" – as a defense. But the Court pauses to note here that Defendants never articulated why they believed the "good faith but erroneous belief" defense as addressed by Senator Gardner equates to the qualified immunity as addressed in *Trimble;* neither did they explain the connection. It would seem that a "good faith but erroneous belief" defense could be presented and would factor into any reasonableness determination by a fact-finder on the merits under article II, section 7 of the Colorado Constitution (prohibiting *unreasonable* searches and seizures). Nevertheless, the Court need not pass on this question. For purposes of this ruling, the Court only concludes that state common law qualified immunity is not a defense under section 13-21-131, C.R.S.

9

legislature is presumed to have passed that bill with full knowledge of all existing law dealing with the subject of qualified immunity. *Robbins,* 107 P.3d at 389; *Vigil,* 103 P.3d at 327. When it broadly provided that "[q]ualified immunity is not a defense to liability" the legislature is presumed to have been aware of the law and intended to make qualified immunity as addressed in *Trimble* and *Leake* – two state cases which would apply to state claims – not available as a defense to claims brought under this state law.

Although in different contexts from what is presented here, other decisions presenting similar issues concerning the question whether the legislature intended to abrogate a common law doctrine in a particular statutory scheme provide some guidance and are instructive. For example, the Court's conclusion here is supported by our supreme court's decision in *Vigil v. Franklin,* 103 P.3d 322 (Colo. 2004). In that case, our supreme court was considering whether our legislature intended to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property when it enacted the premises liability statute. The trial court allowed the common law "open and obvious danger" doctrine to be asserted in the case, even though this doctrine was not addressed or added by the legislature in enacting the premises liability act. The trial court granted summary judgment based on application of the doctrine to the facts. The court of appeals affirmed, and the supreme court then reversed.

In *Vigil,* our supreme court ultimately concluded that even though the premises liability statute was silent as to the "open and obvious danger" doctrine based on common law, by not including it in its comprehensive statutory scheme, the legislature meant to exclude the common law doctrine. It reached this conclusion by noting that the plain language of the statute indicated the statute was to apply in "any civil action brought against a landowner who alleges injury occurring while on the real property of another" (indicating it was the exclusive cause of action in this area) and that individuals may recover "only as provided in subsection (3)" of the statute. This, the court determined, clearly evidenced the legislature's intent to provide the exclusive causes of action and defenses available in civil cases involving torts against landowners. It reached this conclusion after noting that "statutes in derogation of the common law must be strictly construed so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *Id.* at 327 (quotations omitted). "And when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others." *Id.* (quotation omitted).

Just as the supreme court concluded the legislature had done in *Vigil,* the legislature here spoke with exactitude and it manifested its intent. Its intent is that "[q]ualified immunity is not a defense to liability pursuant to this section." § 13-21-131(2)(b), C.R.S. Only, here, the plain language was explicit and directly expressed the legislative intent not to permit qualified immunity as a defense (as opposed to in *Vigil* in which the legislature was silent as to the common law "open and obvious danger" doctrine but the court found the legislature intended to exclude the doctrine by clear implication of its comprehensive legislation in the subject area without providing for the doctrine). Thus, applying the same statutory construction principles as applied in *Vigil,* this case presents the stronger argument that the plain language of our legislature intended to abrogate the

common law defense of qualified immunity when passing SB 20-217. Its express language that qualified immunity is not a defense could not be clearer.

The Court therefore applies the statute as written and concludes that qualified immunity is not a defense to the claims brought under section 13-21-131, C.R.S. The Court notes this conclusion resolves only that Defendants will not be permitted to assert qualified immunity as a defense to shield them from liability. This ruling does not address any other defenses that may be raised in defense of the claims on their merits.

Having concluded that the common law qualified immunity defense is not available to the Defendants under the plain language of the statute, the question then is whether it would be futile to grant the Defendant's request to amend the answer under C.R.C.P. Rule 15 to add this common law immunity defense. The answer is clearly that it would be futile based upon the above reasoning that the defense is not available to these Defendants. Therefore, despite the liberal policy favoring amendments to allow parties to advance their true position, the Court denies the request to amend the answer in this instance as the Court has concluded the common law qualified immunity defense as set forth in *Trimble* and *Leake* is not available.

For all the foregoing reasons, the Court DENIES the motion to amend.

IT IS SO ORDERED.

By the court, this 5th day of April, 2024.

*/s/ Dayna Vise*
_____
District Court Magistrate

This Order was issued in a proceeding where magistrate consent was necessary and any appeal must be taken pursuant to C.R.M. Rule 7(b).