IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 25-cv-00556-SKC-TPO

ESTATE OF JAMES PURDY, *et al.*,

Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, *et al.*,

Defendants.

---

**ORDER**

---

James Purdy, a 76-year-old Vietnam veteran, husband, father, and grandfather with advanced Parkinson's disease and dementia, was arrested and brought to Jefferson County Detention Facility (JCDF) on June 25, 2023. Dkt. 1. He died one month later. *Id.*

According to the allegations in the Complaint,[1] Mr. Purdy's death was a direct result of myriad failures on the part of Defendants—Jefferson County Sheriff Reggie Marinelli, her deputies and staff, heath care provider VitalCore Health Strategies, LLC (VitalCore), and VitalCore staff—to provide appropriate medical care and

[1] The Court accepts the well-pleaded allegations in the Complaint as true and construes them in the light most favorable to the non-moving party, here the Plaintiffs.

accommodations for Mr. Purdy's disabilities, medical conditions, and injuries. As a result, Mr. Purdy fell over 100 times, was unable to properly use the toilet on numerous occasions, and repeatedly rolled out of his bed and onto the floor. Due to Defendants' "wait and see" approach to medical care, Mr. Purdy's injuries went untreated and ultimately resulted in his death from "sepsis and meningitis, complicating blunt force injuries from traumatic fall, in the setting of dementia and gait instability due to Parkinson's disease." *Id.* ¶185.

Mr. Purdy's wife, children, and estate filed this case on February 20, 2025, seeking monetary damages and asserting claims for violations of Mr. Purdy's constitutional rights under the Fourteenth Amendment and Colorado Constitution, negligence resulting in wrongful death, and violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Colorado Anti-Discrimination Act (CADA). The Jefferson County Defendants seek dismissal of all claims against them (Dkt. 30), and VitalCore seeks dismissal of Plaintiffs' claims under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) (Dkt. 56).[2]

The Court has studied the Complaint, the Motions and related briefings, and the governing law. No hearing is necessary. For the following reasons, VitalCore's Motion to Dismiss is GRANTED and Jefferson County's Motion is GRANTED IN

[2] The individual VitalCore Defendants answered the Complaint on May 9, 2025. Dkts. 37-54.

PART and DENIED IN PART. Plaintiffs will be given leave to file an amended complaint that addresses the pleading deficiencies set forth in greater detail below.

## LEGAL PRINCIPLES

### A. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at

679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

**B. Qualified Immunity**

The individual Sheriff Defendants have raised the qualified immunity defense to the various claims asserted against them. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, this Court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory

right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

## ANALYSIS

### A. The Individual Defendants

Plaintiffs seek to hold 15 Sheriff Defendants liable in their individual capacities for deliberate indifference to both Mr. Purdy's serious medical needs and the dangerous conditions of his confinement. For either legal theory, the test for deliberate indifference has both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). First, the plaintiff must show that objectively, the harm complained of is "sufficiently serious" to merit constitutional protection.[3] *Id*. Second, the plaintiff must establish the defendants were subjectively aware of the substantial risk to the plaintiff's health or safety and that they acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). The subjective component requires an "inquiry into a [defendant's] state of mind[.]" *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). The requisite state of mind is

---

[3] The Sheriff Defendants do not dispute that Mr. Purdy's medical diagnoses are serious medical conditions. Dkt. 30, p.5. They do not address whether the conditions of confinement in his cell were objectively dangerous.

"akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (cleaned up). In the Tenth Circuit, a plaintiff must show a defendant "disregard[ed] the specific risk of harm claimed by the prisoner, not a more general risk." *Whiteman v. El Paso Crim. Just. Ctr.*, No.10-cv-02430-WYD-KLM, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011). And it is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837.

In their Motion to Dismiss, the Sheriff Defendants observe that more than half of them appear in a single substantive allegation. Dkt. 30, p.6. Then, in a somewhat cursory fashion, they contend that these allegations "[fail] to establish constitutional violations against these Sheriff Employees and the Court must dismiss them." *Id.* Defendants next argue that even for those individuals implicated in more than one allegation, Plaintiffs have failed to establish that any of them had the requisite state of mind as a gatekeeper to have been deliberately indifferent to a serious medical need. *Id.* pp.6-8. They make no arguments regarding any individual's liability for dangerous conditions of confinement. *Id.*[4]

[4] Defendants can hardly be faulted for this as the allegations supporting a conditions of confinement claim are thoroughly intermingled with those regarding Mr. Purdy's medical needs. And the claim itself is a recitation of legal elements that do not identify or distinguish which of the allegations relate to either or both of Plaintiffs' legal theories. Indeed, Plaintiffs do not compile a list of missing accommodations until their discussion of *policy* failings. As the Court understands this claim from its repeated and exhaustive review of the Complaint, Plaintiffs contend the lack of disability accommodations in Mr. Purdy's cell (such as handrails, full-length bed rails, raised toilet seats, and stable assistive devices like a non-collapsable walker) created

Plaintiffs respond that Defendants' arguments rely on incomplete recitations of the allegations and that Defendants did in fact have subjective knowledge of the obviously serious medical conditions and dangerous conditions of confinement. Dkt. 66, pp.5-8. In support of their assertion that Mr. Purdy's plight was obvious, Plaintiffs contend that under Tenth Circuit precedent, serious lacerations constitute obvious signs of medical distress, and they point to photographs of Mr. Purdy's injuries, which were taken at an unspecified time prior to his death. *Id.* p.7.

The Court agrees with Defendants that Plaintiffs' position suffers from hindsight bias. Indeed, Plaintiffs' argument regarding the obviousness of the dangers is based largely on the total cumulation of events as they are understood now—as opposed to what each Defendant knew at the time based on their specific interaction(s) with Mr. Purdy. For example, throughout their Complaint, Plaintiffs allege that various of the deputies noted in the logbook that Mr. Purdy was "Ok." Plaintiffs then allege that Mr. Purdy is not "OK" and "instead is badly injured, sick,

---

dangerous and inhumane conditions of confinement. If in fact this is the basis of the claim and construing the allegations in the light most favorable to Plaintiffs, the Court concludes it satisfies the objective component of a deliberate indifference analysis. *See LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (Where prison officials ignored the basic needs of a handicapped individual that, among other things, forced the prisoner to drag himself on the floor to use the toilet, the conditions of confinement "fell far short of meeting the broad and idealistic concepts of dignity, civilized standards, humanity, and decency embodied in the Eighth Amendment.") (cleaned up). *See also Thompson v. Colorado*, 278 F.3d 1020, 1032 (10th Cir. 2001) ("[I]n certain limited circumstances such as those involving . . . conditions, states are required to make at least some accommodations for the disabled."), *abrogated on other grounds by*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). But in their Amended Complaint, Plaintiffs would be well advised to clarify this matter.

in pain and suffering profoundly, mentally and physically." *See, e.g.*, Dkt. 1, ¶160. But their assertion that Mr. Purdy is gravely injured, sick, and in pain is not born out in allegations involving specific defendants to make plausible that an individual deputy would have this knowledge. Rather, Plaintiffs attempt to impute this knowledge to the individuals based on their own understanding of the entire course of events. Plaintiffs cannot satisfy the subjective element of deliberate indifference in this fashion.

The foregoing issue only underscores a larger problem with the pleading, it simply does not comply with Rule 8. Out of the 401 paragraphs comprising Plaintiffs' 105-page Complaint, about 170 paragraphs introduce the individual defendants and describe the events of this case from Mr. Purdy's arrest through his tragic death ("timeline allegations"). Dkt. 1, ¶¶15-184. As they noted in their Motion, the individual Sheriff Defendants appear throughout Plaintiffs' recitation of facts in, at most, seven substantive "allegations" each.[5]

In apparent effort to synthesize the timeline allegations, Plaintiffs follow them with a section titled: "Defendants' deliberate indifference to his dangerous conditions of confinement and to his obvious, serious medical need and/or negligence killed Mr. Purdy." *Id.* p.62. In this section, Plaintiffs collectively refer to "All Defendants" and proceed to outline the various ways in which "All Defendants" were deliberately

[5] Many of Plaintiff's allegations are full paragraphs and consist of narrative or compound factual allegations.

indifferent to Mr. Purdy's needs. *Id.* ¶¶185-94. By doing it this way, Plaintiffs necessarily implicate various individual defendants in alleged violations for which they had no involvement. In just one example, Plaintiffs allege "*All Defendants* recklessly took Mr. Purdy off of one of his most critical Parkinson's medications early in his detention…." *Id.* ¶188 (emphasis added). The allegation that "all defendants" did this, let alone all of them did this early in Mr. Purdy's detention, defies belief and is contradicted by even a cursory review of the other timeline allegations.

Similarly, Plaintiffs' claim for violations of the Fourteenth Amendment (Claim One) is asserted against the Defendants *en masse*. But despite framing this as a single cause of action, Plaintiffs have asserted two distinct theories of liability: deliberate indifference to serious medical needs and deliberate indifference to dangerous conditions of confinement. And because it is asserted against 15 individual Sheriff Defendants, there are in reality 30 different claims, each of which requires specific factual allegations bearing out each Sheriff Defendants' personal participation to maintain the claim against any particular defendant.

Further complicating things, Plaintiffs purport to incorporate by reference *all* the preceding paragraphs in support of the claim. *Id.* ¶286. The 285 preceding paragraphs, however, contain the introductory and jurisdictional paragraphs, numerous allegations relevant only to the Sheriff in her official capacity, dozens of allegations relevant only to VitalCore and its employees, and—as it pertains to any one Sheriff Defendant—a panoply of allegations about other Sheriff employees that

are irrelevant to causes of action against different individuals. Indeed, some of the allegations about the Sheriff Defendants undercut the cause of action asserted against them. To illustrate, Plaintiffs allege that all the timeline allegations support the cause of action against Defendant Vargas. But this includes allegations that on July 10, 2023, Vargas found Mr. Purdy on the floor of his cell in his own waste, but Vargas then proceeded to notify medical staff and help Mr. Purdy to the showers. Because of Vargas' actions, the medical staff examined Mr. Purdy's wounds and sent him to the hospital for further examination. Dkt. 1, ¶144. This would seem to be the opposite of deliberate indifference as concerns Defendant Vargas.

To be sure, the Complaint is the very definition of "shotgun pleading," which has been widely criticized in this district. *See Haynes v. Allstate Fire & Cas. Ins.*, No. 19-cv-02397-STV, 2020 WL 816043, at *7 (D. Colo. Feb. 18, 2020) ("[I]t is inappropriate for a plaintiff to incorporate by reference *all* prior allegations into each of her claims.") (emphasis in original); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *7 (D. Colo. Jan. 18, 2013) ("This Court has strongly criticized such use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors."). This style of pleading "foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014) (quoting *Jacobs v. Credit Suisse First Bos.*, No.

11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011)). Given the sheer volume of allegations to contend with, it is little wonder that the Sheriff Defendants' arguments are so limited and that they failed to address the conditions of confinement theory at all.

It is not the Court's responsibility—nor Defendants'—to hypothesize what conduct Plaintiffs seek to hold the individual Sheriff Defendants liable for. Nor is it the Court's duty to search through hundreds of allegations, filter out what it perceives to be irrelevant, and then determine whether what remains can support either or both of Plaintiffs' legal theories against 15 different defendants. *See, e.g., Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court does not have to make arguments or perform research on behalf of litigants); *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *French v. Denver Pub. Schs.*, No. 23-cv-01614-NYW-MDB, 2024 WL 5168139, at *9 n.3 (D. Colo. Dec. 19, 2024) ("The Court is neither obligated nor permitted to construct legal theories on behalf of parties that they do not advance themselves—particularly when they are represented by counsel."). Neither judges nor defendants are "like pigs, hunting for truffles" buried in the pleadings. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).

While Mr. Purdy's tragic circumstances might justify many allegations, it is the prolix manner in which the allegations are currently pleaded that is the problem.

Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief[.]") (emphasis added). Consequently, the Court dismisses Plaintiffs' Fourteenth Amendment claim against the individual Sheriff Defendants, without prejudice, as violating Rule 8. For the same reasons, Plaintiffs' parallel claims against them under Colo. Rev. Stat. § 13-21-131, Colo. Const. Art. II, Section 20, and Colo. Const. Art. II, Section 25 (Claim Six), are also dismissed without prejudice.[6]

**B. Municipal Liability**

Plaintiffs seek to hold VitalCore and Jefferson County liable for violating Mr. Purdy's constitutional rights. It is long-standing precedent that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citing *Monell*, 436 U.S. at 691); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (A governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the

[6] Plaintiffs will be given leave to amend their complaint. If they choose to once again assert claims against these individuals, they will be expected to resolve these issues and consider whether there are sufficient facts to maintain legal actions against each Sheriff Defendant. Should Plaintiffs fail to cure this issue with a subsequent amendment, any future dismissals will be with prejudice based on the presumption that further amendments would be futile.

official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.").

To establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the violation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that is so permanent and settled it constitutes a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) final policymakers' ratification of the decisions (and the basis for them) of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Brammer–Hoelter*, 602 F.3d at 1189–90).

**1. Jefferson County and the Board of County Commissioners**

Beginning with the Jefferson County Defendants, Plaintiffs have named "Jefferson County, Colorado," the Jefferson County Board of County Commissioners (Board), and Sheriff Reggie Marinelli in her official capacity. Defendants contend only the Sheriff is an appropriate defendant in this matter. The Court agrees.

Under Colorado law, any suit against a county must be brought in the name of the board of county commissioners. Colo. Rev. Stat. § 30-11-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of ___________'"). "An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such a case." *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967). The Court, therefore, dismisses any claims against "Jefferson County, Colorado" with prejudice.

The Jefferson County Defendants also ask this Court to dismiss any claims against the Board because—they contend—Sheriff Marinelli is the only appropriate Defendant for jail medical care claims. Dkt. 30, p.3. The answer to this question "depends on whether the Board or the Sheriff was involved in setting the policies at issue." *Est. of Angelo v. Bd. of Cnty. Commissioners of Jefferson Cnty.*, No. 1:23-cv-01607-CNS-STV, 2024 WL 2274080, at *17 (D. Colo. May 20, 2024), *motion to certify appeal denied*, No. 1:23-cv-01607-CNS-STV, 2024 WL 4803098 (D. Colo. Nov. 15, 2024).

In Colorado, a sheriff and a board of county commissioners are distinct public entities and are separately suable. *Id*. While the Board has a duty "at least once annually, to make personal examination of the jail of its county, its sufficiency, and the management thereof . . . the Board does not exercise managerial control over either the sheriff or the detention center and its staff." *McGill v. Corr. Healthcare Companies, Inc.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 2922635, at *6 (D. Colo. June 27, 2014) (quoting Colo. Rev. Stat. 17-26-126 and *Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo. Ct. App. 2002)).

Mr. Purdy's death occurred because of injuries he allegedly sustained while in custody at JCDF, which is the Sheriff's purview. Colo. Rev. Stat. § 30-10-511. In their Complaint, Plaintiffs muddy this distinction in responsibility by engaging in impermissible group pleading, referring to the County, the Board, and the Sheriff collectively as "Jefferson County." Dkt. 1, ¶18. But Plaintiffs cannot hold the Board responsible for policies it neither enacted nor approved nor was required to maintain. And even the Complaint alleges, Sheriff Marinelli is "the final policymaker and decisionmaker in Jefferson County regarding policies, practices and customs pertaining to the operation of the" detention center. Dkt. 1, ¶16. To be sure, according to the Complaint, it was Sheriff Marinelli (and her predecessor) who engaged VitalCore's services via contract. *Id*. ¶23. And apart from the introductory paragraphs, there are no allegations from which to infer that the Board implemented

or established any unconstitutional policy or custom at the detention center.[7] The Court, therefore, dismisses Plaintiffs' claims against the Board with prejudice.

**2. Entity Defendants**

At the outset, the Court observes that Plaintiffs and the Entities have very different views as to which policies, practices, and customs are at issue in this case. VitalCore is under the impression Plaintiffs seek to hold it liable for a policy or custom of providing incompetent health care and for a failure to train and supervise its staff. Dkt. 56, pp.11-15. In their Response, Plaintiffs contend VitalCore is also liable for a lack of policies and protocols, its "wait and see" approach to treating patients, a failure to discipline, and for the combined conduct of all VitalCore employees. Dkt. 73, pp.2-13. Whether these theories are distinct from, or overlap with, the policies VitalCore addresses is murky at best.[8]

The Jefferson County Defendants believe Plaintiffs' *Monell* claims are based on its decision to contract with VitalCore, which included VitalCore's financial incentives to delay care, and Sheriff Marinelli's failure to train her staff. Dkt. 30, p.13. Plaintiffs argue the Sheriff is also liable for a lack of policies and practices, the

---

[7] It is worth mentioning that Plaintiffs subvert their position that the Board is an appropriate defendant when they allege the Board "manages the affairs of the county *as authorized by the state*." Dkt. 1, ¶17 (emphasis added). By statute, and subject to an exception not relevant here, only the Sheriff has authority over the Jefferson County Detention Facility. Colo. Rev. Stat. § 30-10-511.

[8] In its Motion to Dismiss, VitalCore has also included arguments that appear unrelated to the facts of this case. Dkt. 56, pp.12-13.

"wait and see" approach to seeking medical care for detained persons, a failure to adequately investigate and discipline one of VitalCore's employees, and the combined conduct of all Sheriff Defendants.[9] Dkt. 66, pp.11-20.

---

[9] Plaintiffs also assert a theory of "non-delegable duty" against Sheriff Marinelli. The allegations in support of this theory are slim and scattered throughout the Complaint, which Plaintiffs must rectify if they wish to pursue the argument. Because the question will undoubtedly return in the next round of briefing, the Court addresses this issue only to note that contrary to Defendants' assertion, the District of Colorado is not alone in its recognition of the concept. While other courts may use different nomenclature, the concept that municipalities may not escape liability by delegating their duty to provide appropriate medical care is not unique to this district. *See, e.g.*, *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services....The underlying rationale is not based on respondeat superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it."); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) (county "retains responsibility [for inmates' medical care] despite having contracted out the medical care of its prisoners"); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("[T]he mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment.") (citing *West*, 487 U.S. at 56); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("This duty [to provide medical care to inmates] is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable."); *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 267 (M.D.N.C. 2015) ("[W]hen the County purportedly contracted out the performance of inmate medical care, at least some of Corizon's policies became 'that of the County,' and thus potential § 1983 liability is not based on respondeat superior."); *Scott v. Clarke*, 64 F. Supp. 3d 813, 819 (W.D. Va. 2014) (governments "may not insulate themselves from Eighth [or Fourteenth] Amendment claims premised upon allegations of deficient medical care by delegating responsibility for the provision of medical care to third parties."); *Kellogg v. Kitsap County*, No. C12-5717, 2013 WL 2181808, at *4 (W.D. Wash., May 20, 2013) (county "cannot shield itself from § 1983 liability by contracting out its duty to provide medical services. The underlying rationale is not based on respondeat superior, but rather on the fact that the [third party's] policy becomes that of the County if the

That the parties pass like ships in the night regarding the premise of the *Monell* claims is attributable to the same defects dogging Plaintiffs' claims against the individuals, namely that the *Monell* allegations in the first claim are little more than legal conclusions masquerading as fact (Dkt. 1, ¶¶303-317), and Plaintiffs incorporation (by reference) of all preceding paragraphs of their Complaint. *Id.* ¶286. The only way for the Entities to endeavor to determine which policies, practices, and customs are alleged to be their own is to sift through the preceding 285 allegations and take their best guess.

But as was the case with the individuals, Plaintiffs allegations are largely group pleaded against "the Entity Defendants" without differentiation. For instance, Plaintiffs contend the "Entity Defendants were on notice that they had numerous additional policies and customs that were constitutionally infirm." *Id.* p.76. The Complaint then proceeds—over 20 paragraphs (not including subparts)—to provide a laundry list of the "Entity Defendants'" purported policy failures, which are completely untethered from any facts in the timeline allegations or otherwise. *Id.*

County delegates final decision-making authority to it."); *Sullivant v. Spectrum Med. Servs.*, No. 11-00119, 2013 WL 265992, *8 (D. Mt. Jan. 23, 2013) (county "cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."); *Wilson v. Douglas Cnty.*, No. 8:03CV70, 2005 WL 3019486, at *1 n.1 (D. Neb. Nov. 10, 2005) (county may be liable "notwithstanding that the County contracted with Wexford, a private company, to provide medical services to inmates"); *Herrera v. Cnty. of Santa Fe*, 213 F.Supp.2d 1288, 1292 (D.N.M. 2002) (Where "the county delegated final policy-making authority for the operation of the detention center to [a third party], [a]ny custom or policy established by [the third party] with respect to such operation, therefore, constitutes a custom or policy of the county for purposes of § 1983 liability.").

¶¶245-262. For all the Court can tell, this section may assert a single *Monell* claim or fifty or more. As a result, the Court dismisses Plaintiffs' municipal liability claims against the Sheriff and VitalCore without prejudice, as failing Rule 8.[10]

### C. Remaining Claims

#### 1. Negligence Causing Wrongful Death

The Sheriff Defendants contend that Colo. Rev. Stat. § 13-80-103(1)(c) bars Plaintiffs' state law wrongful death claim because it provides a one-year statute of limitations for all actions against sheriffs. *Id. See Est. of Angelo v. Bd. of Cnty. Commissioners of Jefferson Cnty.*, No. 1:23-cv-01607-CNS-STV, 2024 WL 2274080, at *20 (D. Colo. May 20, 2024); *Estate of Burgaz v. Shrader*, 21CA1648, 2022 WL 22923177, at *2 (Colo. App. Dec. 15, 2022) (unpublished opinion). Plaintiffs contend this section is inapplicable because the Sheriff is being sued in her official capacity, which is, therefore, a suit against a public entity.[11] Dkt. 66, p.24. Lawsuits against

---

[10] While the Court need not address the Sheriff or VitalCore's other arguments, it does so only to agree with Defendants that allegations regarding other cases, which do not mention the disposition of the lawsuits or whether an entity was found to have violated any rights, does not establish a pattern or practice for purposes of *Monell*. *See Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *8 (D. Colo. Mar. 31, 2017). Vague allegations regarding other "meritorious constitutional claims" of deficient medical care—without *any* details or disposition—are even less helpful.

[11] Plaintiffs appear to concede the one-year limitations period applies to the individual Sheriff employees. Thus, this claim will be dismissed with prejudice against those individuals.

public entities, Plaintiffs argue, are governed by the two-year statute of limitations under Colo. Rev. Stat. § 13-80-102(1)(h).

In support of their position, Plaintiffs cite *Briggs v. Larimer Cnty. Sheriff's Dep't*, No. 05-cv-02027-WYD-PAC, 2007 WL 2175184, at *5 (D. Colo. July 26, 2007) and *Gallegos v. City of Monte Vista*, 976 P.2d 299 (Colo. App. 1998). Dkt. 66, pp.24-25. But both cases turned on the fact that the plaintiffs brought claims against entities and not individuals; therefore, those courts concluded the two-year statute of limitations applied.[12] And the Colorado Court of Appeals recently discussed the question directly in *Est. of Burgaz v. Shrader*. There, the division observed that the language of the one-year statute of limitations "plainly applies to *all* claims against sheriffs, even those based on misconduct by the entities they oversee." 2022 WL 22923177 at *3. To be sure, the statute applies to sheriffs "*regardless* of the theory upon which suit is brought, or against whom suit is brought." Colo. Rev. Stat. § 13-80-103(1)(c) (emphasis added).

This Court is persuaded by the reasoning of both the Colorado Court of Appeals and the jurists in this district to have considered the issue. This Court agrees "the plain language of § 103 [applies] the one-year statute of limitations to sheriffs and other law enforcement officers, even when sued in their official capacities." *Est. of Angelo*, 2024 WL 2274080, at *21 (collecting cases); *see also Garcia v. Harms*, 410

[12] The Court in *Briggs* did not discuss whether filing a suit against the Sheriff's Department, as opposed to naming the Sheriff, was appropriate.

P.3d 561 (Colo. App. 2014) (holding that claims against law enforcement officers in their official capacities are subject to § 103).

Plaintiffs filed their Complaint on February 20, 2025, which is almost 19 months after Mr. Purdy died. Under the statute of limitations, therefore, these claims are untimely and must be dismissed with prejudice against the Sheriff Defendants.

**2. ADA, Rehabilitation Act, and CADA Claims**

In their second, third, and fourth claims for relief, Plaintiffs contend Sheriff Marinelli failed to accommodate Mr. Purdy's disabilities and prevented him from accessing JCDF services, programs, or activities in violation of the ADA, the Rehabilitation Act, and the CADA, respectively. Dkt. 1, ¶¶318-32, 333-49, 350-63. Title II of the ADA states, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Analysis of a claim under Title II of the ADA is identical to an analysis under the Rehabilitation Act." *Kimble v. Douglas Cty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1182 (D. Colo. 2013) (citing *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998)). And in turn, "[w]henever possible, the CADA should be interpreted consistently with the Americans with Disabilities Act." *Tesmer v. Colorado High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006). So, the Court analyzes these three claims together.

"To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). The statutes require more than physical access to facilities and services; instead "it requires public entities to provide *meaningful* access to their programs and services." *Id*. at 1195 (emphasis in original). And regarding the third element, the Tenth Circuit has been clear: "Any failure to provide reasonable accommodations for a disability *is necessarily 'because of a disability*.'" *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) (emphasis added). "[N]o proof of a particularized discriminatory animus is exigible." *Id*.

In the Motion to Dismiss, Sheriff Marinelli concedes Mr. Purdy was a qualified individual with a disability, but she contends the claim should be dismissed because Plaintiffs have failed to allege that Mr. Purdy was denied access to any service, program, or activity. She further argues that even if he was denied access, there are no allegations that the denial was by reason of his disability. Dkt. 30, p.24. The Court disagrees.

As an initial matter, the Sheriff only appears to address this claim in the context of the medical care that Mr. Purdy did or did not receive. And if that were the sole basis for Plaintiffs' claims, the Court would be inclined to agree that dismissal is

appropriate. *See Rashad v. Doughty*, 4 Fed. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."). However, in their disability claims, Plaintiffs also contend the Sheriff violated the Colorado and federal statutes when she failed to provide appropriate disability accommodations in Mr. Purdy's cell. Because the Sheriff did not address this claim, the claim will not be dismissed. But even had Defendants addressed the issue of disability accommodations, the Court would nevertheless conclude Plaintiffs have sufficiently stated a claim.

According to Plaintiffs' timeline allegations, Mr. Purdy repeatedly fell in his cell due to unsteadiness related to Parkinson's Disease. And Mr. Purdy's walker was apparently collapsible and collapsed many times while in use, resulting in more falls and injuries. Because of his mobility issues, using the toilet, the sink, and the showers was very difficult for Mr. Purdy. His standing and walking instability often resulted in him falling into the toilet or defecating and urinating on the floor. The Plaintiffs also allege that Mr. Purdy's disabilities caused him to repeatedly roll out of bed and injure himself when falling to the floor, and even when the detention center installed a partial bed rail, it was still insufficient to keep Mr. Purdy safe.

Numerous courts, including in this district, have found "that a prison's failure to accommodate an [incarcerated individual's] request for an accessible cell is sufficient to state a claim under the ADA and RA." *Boles v. Colorado Dep't of Corr.*,

No. 19-cv-01158-WJM-STV, 2021 WL 11449163, at *21 (D. Colo. Feb. 16, 2021). *See, e.g., Banks v. Patton*, 743 F. App'x 690, 697 n.1 (7th Cir. 2018) (The defendant's argument "that placing an inmate in a cell with a toilet and bed is enough, even if the inmate cannot use either easily ... is a dubious proposition because *meaningful* access is required." (emphasis in original)); *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) ("[D]enials of meals and adequate housing [including denial of request for accessible cell] by reason of his disability can form the basis for viable ADA and RA claims."); *Ramirez v. Bernstein*, No. 17 CV 3825 (VB), 2020 WL 7230729, at *7 (S.D.N.Y. Dec. 7, 2020) (allegation that plaintiff was denied reasonable accommodation, including wheelchair-accessible cell, sufficient to state a claim under ADA and RA); *Cosby v. Rusi*, No. 3:20CV459 (MPS), 2020 WL 3577482, at *6 (D. Conn. July 1, 2020) (alleged denial of accommodations, including "handicap accessible cell," sufficient to a state claim under ADA and RA); *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) ("Providing a prisoner with a bed that he cannot access is no less a failure to reasonably accommodate than housing him in a cell from which he cannot access meals.").

The Court is persuaded by the reasoning in these cases and concludes the allegations here plausibly allege the Sheriff's failure to accommodate interfered with Mr. Purdy's meaningful use of his cell, to include his toilet, sink, and bed as well as the facility showers, thus impacting his fundamental activities of daily living. Moreover, given the number of times Mr. Purdy is alleged to have fallen, rolled from

his bed, and was unable to access the toilet, the Court finds these allegations are sufficient at this stage of the proceedings to plausibly establish Mr. Purdy's needs were obvious. *See Robertson*, 500 F.3d at 1197 ("When a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim."). Accordingly, the Court concludes Plaintiffs have plausibly alleged claims under the ADA, the Rehabilitation Act, and the CADA. But to the extent Plaintiffs intended to assert these claims based on Defendants' failure to provide medical care related to Mr. Purdy's disabilities, those claims are dismissed with prejudice.

* * *

Based on the chain of events in this case, one could reasonably infer that *something* went wrong during Mr. Purdy's detention that resulted in his death. But the allegations try too hard to make the case in one fell swoop causing the Complaint to stray away from the pleading wisdom of Rule 8. For the reasons shared above, therefore, IT IS ORDERED:

1. Defendant Vitalcore Health Strategies, LLC's Motion to Dismiss is GRANTED and Plaintiffs' *Monell* claim is dismissed without prejudice.

2. The Jefferson County Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

    a. Plaintiffs' claims against "Jefferson County, Colorado" and the Jefferson County Board of County Commissioners are **dismissed with prejudice**.

    b. Plaintiffs' Negligence Causing Wrongful Death claim (Claim Five) is **dismissed with prejudice** as barred by the statute of limitations.

c. Plaintiffs' Fourteenth Amendment (Claim One) and Colorado Constitutional (Claim Six) claims against the Sheriff Defendants in their individual capacities, and their claims against Sheriff Marinelli in her official capacity are **dismissed without prejudice**.

d. Plaintiffs' claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Colorado Anti-Discrimination Act regarding the Sheriff's failure to provide disability accommodations in Mr. Purdy's cell, including mobility accommodations, **shall proceed**. These claims are dismissed with prejudice in all other respects.

3. On or before the close of business on October 14, 2026, Plaintiffs shall file a First Amended Complaint addressing the pleading deficiencies as outlined above.

4. Defendants shall answer or otherwise respond to the First Amended Complaint as contemplated by the Federal Rules of Civil Procedure.

5. The Parties are reminded of their option to request a settlement conference or other alternative dispute resolution proceeding with United States Magistrate Judge Timothy P. O'Hara.

DATED: September 29, 2026.

BY THE COURT:



S. Kato Crews
United States District Judge